**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ASHLEY RUST DIGITAL, INC. d/b/a | § | |
| ASHLEY RUST ASSOCIATES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIV. ACTION NO. 5:23-cv-701 |
| | § | |
| AUTOLOTTO, INC. d/b/a LOTTERY.COM | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, Ashley Rust Digital, Inc. d/b/a Ashley Rust Associates ("ARD" or "Plaintiff") and files this Complaint against AutoLotto, Inc. d/b/a Lottery.com ("Lottery.com" or "Defendant"), and respectfully shows the Court as follows:

## I.
## PARTIES

1. Plaintiff Ashley Rust Digital, Inc. d/b/a Ashley Rust Associates is a New York domestic business corporation with a registered office and principal place of business at 106 Squaw Lane, B1925, Zephyr Cove, NV, 89448.

2. Defendant AutoLotto, Inc. d/b/a Lottery.com is a Delaware corporation doing business in the state of Texas, with a mailing address at 20808 State Hwy 71 W., Unit B, Spicewood, Texas 78669. It can be served with process through service upon its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

## II.
## JURISDICTION

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

4. The Court has specific personal jurisdiction over the Defendant because Lottery.com established sufficient minimum contacts within the forum and purposefully availed itself of the benefits and protections of the forum state. Specifically, the suit arises out of and is related to the following contacts by Lottery.com within the forum:

1. Lottery.com maintains a business address in Spicewood, Texas and used the Texas address in its Agreement with ARD as the place where notices were to be sent pursuant to Paragraph 15 of the Agreement.

2. Email and telephone communications initiated by Lottery.com from within the State of Texas.

3. Lottery.com's then-Chief Executive Officer, Tony DiMatteo, conducted Lottery.com business related to the Agreement between the parties from the State of Texas.

## III.
## VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.
## FACTUAL BACKGROUND

6. ARD is a boutique, full-service public relations, digital branding, and online reputation management firm that provides bespoke digital solutions for executives and their companies. ARD works with individuals and corporations to improve their brands and online presence. For example, ARD is a referral-only business that, on average, works closely with less than ten clients at any given time and regularly works with company CEOs, A-list celebrities, NFL

head coaches, hedge fund managers, and publicly traded companies. Because ARD handles a small number of clients at a time, ARD invests significant time and energy into communicating with its clients to understand the client's unique needs and develop appropriate communication solutions.

7. ARD is a referral-only business, and new clients are only taken on if one of ARD's existing clients refers a potential client and ARD can professionally vet the potential new client. ARD was professionally referred to Tony DiMatteo and Lottery.com by one of its existing clients, a New York City-based hedge fund. In March 2021, ARD was hired by Lottery.com's then-CEO, Tony DiMatteo, to improve his personal brand and increase visibility as Lottery.com prepared for a merger with a special purpose acquisition company. ARD worked with DiMatteo without incident from April 2021 until March 2022.

8. In November 2021, Lottery.com debuted as a publicly-traded company, and in February 2022, DiMatteo expressed an interest in expanding ARD's services to include public relations, branding, and search engine optimization ("SEO") work for his company, Lottery.com. At the time, DiMatteo was dissatisfied with Lottery.com's current PR firm and preferred ARD's public relations approach. DiMatteo was satisfied with the work ARD had done to improve his personal brand and wanted to improve Lottery.com's online presence, garner new press, and engage in a more comprehensive digital branding approach.

9. In preparing to expand its services to Lottery.com, ARD wrote and submitted a proposal that outlined the scope of its work for Lottery.com. After outlining the scope of work and negotiating terms of the Agreement, ARD began preliminary work for Lottery.com in February 2022. ARD and Lottery.com entered into a new, expanded Agreement effective March 24, 2022, that governed the parties' relationship. Under the Agreement, ARD was to provide public relations, online reputation management, and digital branding services to both DiMatteo and Lottery.com.

The Agreement sets forth a term of twelve months and Lottery.com was to pay ARD a retainer of $25,000.00 per month for its services, which was based on approximately one hundred hours of work per month. On March 21, 2022, Lottery.com made its initial—and only—payment to ARD under the terms of the Agreement. As part of the Agreement, Lottery.com should have continued paying its account up front and on a monthly basis.

10. Ashley Rust signed the Agreement on behalf of ARD, and Ryan Dickinson, in his capacity as CFO of Lottery.com, signed on behalf of Lottery.com. This was an arms-length negotiation ultimately resulting in a fully executed agreement.

11. The scope of services under the Agreement is exhaustive and ARD agreed to perform comprehensive public relations services for Lottery.com, which included: public relations, including press and media outreach, interview preparation, award and conference recommendations; brand building, including company brand guideline development, thought leadership content development, and social media strategy and consulting; digital brand building and SEO, including digital branding, Wikipedia page development, and Google Knowledge Graph build; and brand protection, including conversation monitoring and balancing and digital privacy.

12. Once the parties agreed to the terms of the Agreement and signed it, ARD began its work on Lottery.com's account. Because of the nature of public relations and brand work, ARD's work for Lottery.com was front-loaded and ARD worked extensively on Lottery.com's account in the months of March, April, May, June, and July 2022.

13. Lottery.com's account demanded a large time commitment, so ARD hired a Creative Brand Director specifically to be assigned to this account. At the outset, ARD began improving Lottery.com's Google search results and began reaching out to various media outlets to potentially interview DiMatteo in his capacity as CEO. ARD also completely overhauled

Lottery.com's brand guidelines in order to create branding guidelines that reflected ARD's quality of service. As an example, below is a high-level summary of work performed in reliance on ARD and Lottery.com's Agreement:

| Date: | Task: |
|---|---|
| March 24, 2022 | Ashley Rust sends a job offer to Creative Brand Director based on the Lottery.com Agreement. |
| March 24, 2022 | Lottery.com Agreement is signed by Ashley Rust and then-CFO Ryan Dickinson. |
| March 25, 2022 | Creative Brand Director is hired by ARD. |
| March 25, 2022 | ARD begins PR, social, and branding work for Lottery.com. |
| April 4, 2022 | ARD launches internal discovery calls with the Lottery.com team. |
| April 6, 2022 | Creative Brand Director starts work. |
| April 7, 2022 | ARD holds an in-person meeting in NYC with DiMatteo and VP of Marketing Marielle Bianchino at the Neuehouse. |
| April 13, 2022 | Ashley Rust secures and pays for Lottery.com required cyber risk insurance pursuant to Agreement. |
| April 18, 2022 | ARD secures Las Vegas Executive Brand Workshop dates from Lottery.com (May 2-4). |
| April 25, 2022 | Las Vegas Executive Brand Workshop - PreWork and agendas sent to Lottery.com. |
| April 27, 2022 | ARD prepares and delivers for presentation a Q2 Messaging Presentation. |
| May 3, 2022 | Executive Brand Workshop held by ARD in Las Vegas for Lottery.com. |
| May 18, 2022 | ARD updates and sends Global Brand Guide to the Lottery.com team. |
| May 18, 2022 | ARD completes Brand Guidelines and sets presentation call with executives. |
| May 23, 2022 | ARD reaches out to 193 journalists across three states for interviews regarding Lottery.com. |
| June 6, 2022 | ARD neutralizes negative conversations online about Lottery.com. |
| June 15, 2022 | Katie Lever halts PR outreach following publication of Tony DiMatteo's BizNinja interview, but ARD continues digital brand work. |
| June 15 - July 21 | Digital brand work, SEO and social work continues as normal. |
| July 21, 2022 | DiMatteo notifies ARD that today is his last day as CEO - Katie Lever is now POC. |
| July 23, 2022 | Tony requests help updating his digital profiles to reflect that he is an "advisor." He assures payment. |
| August 1, 2022 | ARD ceases services until an update is made / payments are received. |
| August 9, 2022 | Ashley Rust has a call with Katie Lever to discuss next steps - she does not cancel. |

| Date: | Task: |
|---|---|
| September 13, 2022 | DiMatteo calls Ashley Rust about current status. Requests another proposal to help them recover from the bad press and tells ARD payment is forthcoming. |
| September 21, 2022 | Ashley Rust sends contract cancellation letter to Lottery.com. |
| September 26, 2022 | Ashley Rust sends a requested proposal to Lottery.com for continued services. |

14. Throughout the months that ARD worked on Lottery.com's account, Ashley and her team were in constant contact with Lottery.com's marketing team working on various methods of improving the overall brand and ensuring that negative conversation about Lottery.com was kept to a minimum. Between March and August 2022, the ARD team logged at least thirty-three calls with Lottery.com and exchanged hundreds of emails between ARD's team and Lottery.com. These calls and emails were made to various executives and employees of Lottery.com. ARD also recorded over five hundred hours of work for Lottery.com.

15. ARD arranged and executed two workshops for Lottery.com in New York and Las Vegas and used the workshops as opportunities to align with Lottery.com's team and discuss branding strategies and to conduct brand work with the team. For the Las Vegas brand workshop, Ashley and her team met with several Lottery.com then-executives, including DiMatteo, Katie Lever (Chief Operating Officer and Chief Legal Officer), Ryan Dickinson (Chief Financial Officer), Matt Clemson (Chief Revenue Officer), as well as Lottery.com's vice president of marketing, head of product, and compliance officer. In connection with these workshops, ARD incurred expenses which, pursuant to the Agreement, were charged to Lottery.com.

16. Even though Lottery.com only made one initial payment in March 2022, ARD was continually reassured that it would be paid for its services. Each time ARD requested payment, a new excuse was furnished by Lottery.com about why there was a delay in paying the account. On

September 21, 2022, and pursuant to Paragraph 2 and Schedule A of the Agreement, ARD notified Lottery.com that it would be terminating the Agreement between the parties due to Lottery.com's nonpayment.

17. After its one initial payment of $25,000.00, Lottery.com failed to continue to make its monthly payment of $25,000.00 for the months of April, May, June, July, and August. In April and May, Lottery.com also failed to pay $2,270.00 in expenses that ARD incurred in planning and executing the Las Vegas brand workshops.

18. In accordance with Paragraph 16 of the Agreement and in reliance on the existence of the Agreement between ARD and Lottery.com, ARD purchased the required Cyber Risk Insurance in the amount of $2,248.00. In further reliance on the existence of the Agreement between ARD and Lottery.com, ARD specifically hired a Creative Brand Director to assist with Lottery.com's account. When Lottery.com failed to pay for ARD's services, ARD was forced to terminate that employee's position. While the employee was working on Lottery.com's account, ARD paid the employee $41,260.85 and incurred the expense of purchasing equipment for the employee to use for her work in the amount of $2,205.91.

## V.
## FIRST CLAIM FOR RELIEF:
## BREACH OF CONTRACT

19. ARD incorporates its prior allegations as if fully set forth herein.

20. The Agreement signed between ARD and Lottery.com is a valid, enforceable contract. ARD performed its contractual obligations under the Agreement by performing its full-service public relations services for Lottery.com. Lottery.com breached the Agreement by continuing to receive services from ARD and failing to pay for those services in violation of the Agreement. ARD has been damaged by Lottery.com's breach of the Agreement because it was not

paid according to the terms of the Agreement and incurred other expenses in reliance on the existence of the Agreement.

**VI.**
**SECOND CLAIM FOR RELIEF:**
**QUANTUM MERUIT**

21. ARD incorporates its prior allegations as if fully set forth herein.

22. If the Court were to find that no contract existed between the parties, ARD alternatively pleads a claim for relief under the equitable doctrine of quantum meruit. ARD tendered valuable services to Lottery.com in the form of its public relations and brand improvement services. These services were for Lottery.com and to improve Lottery.com's public and digital image. Lottery.com accepted ARD's services and used and enjoyed them by continuing to allow ARD to work on its account despite nonpayment. ARD exhausted thousands of dollars in working on Lottery.com's account and performing under the Agreement signed by the parties, delivering countless public relations, branding, and marketing materials for Lottery.com's benefit.

23. ARD reasonably notified Lottery.com that it expected to be paid for its services by sending monthly invoices to Lottery.com. ARD performed services for Lottery.com with the expectation that Lottery.com would pay for those services. Evidence of ARD's services is overwhelming, and Lottery.com wholly failed to pay ARD for its services. Lottery.com also failed to pay ARD for the expenses it incurred in furtherance of the performance of its services and ARD incurred additional damages.

**VII.**
**ATTORNEYS' FEES**

24. ARD incorporates its prior allegations as if fully set forth herein.

25. ARD is entitled to recover reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code because this suit is for breach of a written contract.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ashley Rust Digital, Inc. d/b/a Ashley Rust Associates prays that citation be issued for AutoLotto, Inc. d/b/a Lottery.com to appear and answer, and that after notice and trial or hearing, ARD prays the Court order and award the following:

1. Actual damages;
2. Reasonable and necessary attorneys' fees;
3. Pre-judgment interest;
4. Post-judgment interest;
5. Court costs;
6. Any other relief to which Ashley Rust Digital, Inc. d/b/a Ashley Rust Associates may be entitled to at law and in equity.

Respectfully submitted,

*/s/ David M. Prichard*

David M. Prichard
State Bar No. 16317900
Email: dprichard@prichardyoungllp.com
*Attorney-in-Charge*
David R. Montpas
State Bar No. 00794324
Email: dmontpas@prichardyoungllp.com
Katherine L. Mallon
State Bar No. 24120644
Email: kmallon@prichardyoungllp.com

PRICHARD YOUNG LLP
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone: (210) 477-7400
Fax: (210) 477-7450

**ATTORNEYS FOR PLAINTIFF ASHLEY RUST DIGITAL, INC. D/B/A ASHLEY RUST ASSOCIATES**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded to counsel of record as set forth below, in compliance with the FEDERAL RULES OF CIVIL PROCEDURE on this **31st day of May 2023**.

Andy “Gator” Korn
4221 Avondale Ave.
Dallas, TX 75219
andrew@receiverandrewkorn.com
Telephone: (214) 521-0500
*Attorney for Defendant*

*/s/ David M. Prichard*
David M. Prichard